IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JEFFREY DAVID BENSON )
)
    Plaintiff, )
)
 -vs- ) Civil Action 19-111
)
ANDREW M. SAUL, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Jeffrey David Benson ("Benson") seeks review of a decision denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. Benson alleges an onset of disability on July 9, 2015. (R. 13) His claim was denied initially. Following a hearing during which both Benson and a vocational expert ("VE") appeared and testified, the ALJ denied benefits. Ultimately this appeal followed. The parties have filed Cross Motions for Summary Judgment. *See* ECF Docket Nos. 7 and 9. For the reasons set forth below, the ALJ's decision is affirmed.

### Opinion

1. Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records on which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When

1

reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson,* 402 U.S. at 390, 91 S. Ct. 1420.

A district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.,* 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have

2

decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

II. The ALJ's Decision

The ALJ denied benefits at the fifth step of the analysis. More specifically, at step one, the ALJ found that Benson has not engaged in substantial gainful activity since the application date. (R. 15) At step two, the ALJ concluded that Benson suffers from the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy, post-laminectomy syndrome, systemic lupus erythematosus, Sjogren's syndrome, rheumatoid arthritis, coronary artery disease with angina pectoris, diabetes mellitus, diabetic neuropathy and hypertension. (R. 15-16) At step three, the ALJ determined that Benson did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-18) Between steps three and four, the ALJ decided that Benson had the residual functional capacity ("RFC") to perform a range of medium work with certain restrictions. (R. 22-24) At the fourth step of the analysis, the ALJ concluded that Benson was unable to perform his past relevant work. (R. 25) Ultimately, at the fifth step of the analysis, the ALJ concluded that, considering Benson's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that she could have performed. (R. 25-26)

III. Discussion

(1) Medical Opinions

Benson urges that the ALJ failed to evaluate the medical opinion evidence in accordance with regulations and case law. The amount of weight accorded to medical

3

opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c)(1).[1] In addition, typically the ALJ will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such a consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). The opinion of a treating physician need not be viewed uncritically, however. Rather, only when an ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," must he give that opinion controlling weight. *Id.* Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient / physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. *Id.* § 404.1527(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.* § 404.1527(c)(4).

---

[1] Although the regulations governing the evaluation of medical evidence have been amended, the version effective March 27, 2017 does not apply to the present claim. See 20 C.F.R. § 404.1527 (2017); 20 C.F.R. § 404.1520c (2017).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Soc. Sec. Admin.*, 403 Fed. Appx. 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." See 20 C.F.R. § 404.1527(d)(1), (3); *Dixon v. Comm'r. of Soc. Security*, 183 Fed. Appx. 248, 251-52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.")

Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason of for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of his final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008).

Here, Benson contends that the ALJ erred in failing to follow the standard above with respect to the opinions rendered by Dr. Gerhart, his primary care physician, and Dr. Bryson, his rheumatologist. I find that the ALJ weighed the opinions in consideration with all of the evidence of record and that there is no basis for remand. For instance, the ALJ explained that he discounted Gerhart's and Bryson's opinions because they were inconsistent with their own treating notes; inconsistent with Benson's activities of daily living; not supported by the functional capacity evaluation; and inconsistent with his generally normal examinations and conservative treatment. (R. 24) These are valid and acceptable reasons for discounting opinion evidence. See 20 C.F.R. §§ 404.1527; 416.927 (Evaluating Opinion Evidence). Furthermore, I find that there is substantial evidence of record to support the ALJ's weighing of Gerhart's and Bryson's opinions in this regard.[2] Consequently, I find no basis for remand.

(2) Residual Functional Capacity Assessment

---

[2] Insofar as his contention that the opinion was internally inconsistent with Bryson's own records, the ALJ cited to substantial evidence of record indicating the Bryson repeatedly found Benson's examinations to be normal; that he had full strength in all extremities; that he displayed a full range of motion; that he had no pain in shoulders, elbows, wrists, hips, knees and ankles, that medication stabilized his lupus, that his blood work did not show any signs of toxicity; that he did not display signs of acute distress; that he denied significant flareups; and that he appeared to be doing well. (R. 410-24, 572, 613-15, 622-23). Similarly, the ALJ cited to substantial evidence that Gerhart's records were inconsistent with findings of disabling conditions. For example, Benson displayed normal gait, and was encouraged to continue ongoing home therapy efforts regarding lumbar spinal stenosis. (R. 20, 694-698) Following a fall, Gerhart noted that Benson did not have an acute fractures and he was instructed to ice and stretch. (R. 704) Benson's lupus continuously presented as stable, and in March of 2017, he deferred evaluation for options regarding lumbar spinal stenosis, stating that it was "not that bad yet." (R. 706-709) With respect to activities of daily living, substantial evidence supports the ALJ's finding that Benson's activities of daily living, such as his ability to: prepare his own meals; complete some household chores; drive; venture out alone; go shopping; manage his finances; spend time with others; finish what he starts; follow instructions; and to be independent in his personal care were inconsistent with his treating physicians' opinions. (R. 22, 186-195) Similarly, the Functional Capacity Evaluation differs from Bryson's and Gerhart's conclusions. In the FCE, Rachel Kenswell, DPT, indicates that Benson is capable of engaging in medium work in accordance with the Department of Labor Guidelines. (R. 801). Other medical evidence of record also contradicts Bryson's and Gerhart's conclusions. As the ALJ noted, Dr. Ahmed opined that Benson could lift and carry up to 50 pounds frequently, sit / stand/ walk for 6 hours each in an 8-hour workday, could engage in a variety of postural activities; and could frequently use his hands and feet. (R. 23, 502-07) Similarly, the ALJ gave some weight to the opinion of Dr. Reardon, who indicated that Benson could engage in a reduced range of medium work. (R. 23, 70-71)

Next Benson takes issue with the ALJ's RFC formulation. According to Benson, the RFC is deficient because the ALJ failed to cite to a single medical opinion of record in support of the findings that: (1) he is able to frequently climb ladders, ropes and scaffolds; and / or (2) he is able to perform low stress work defined as occasional simple decision making and occasional changes in the work setting. The Government counters that a medical opinion setting forth these specific findings was not required. After careful consideration, I find no error with the RFC.

As to the lack of a restriction on climbing, even accepting Benson's argument, as the Government points out, this is a harmless error. The ALJ found Benson capable of performing the representative jobs of linen-room attendant and laundry aid. According to the Dictionary of Occupational Titles, these jobs do not require climbing. *See* DOT 222.387-030, 1991 WL 672098 ("Climbing Not Present") and DOT 323.687-010, 1991 WL 672782 ("Climbing Not Present"). With respect to the low stress jobs, Benson relies on Bryson's Medical Source Statement in which she opines that Benson is incapable of even low stress jobs. (R. 657) However, Bryson's "opinion" is set forth in a "check box form." Her explanation for choosing "incapable of even 'low stress' work" rather than "moderate" or "high" stress is: "worsens symptoms." (R. 657) It is well-established that check box forms merit little weight. *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). As stated above, the ALJ gave Bryson's opinion "little weight." Further, although no medical provider specifically opined that Benson *was capable* of performing "low stress" work, Dr. Ahmed and Dr. Reardon each opined that Benson was capable of performing a range of medium work. (R. 70-72, 502-07) Neither

7

physician included limitations based upon Benson's inability to tolerate stress. I think it fair to infer that a declaration that a claimant is able to perform medium range work, without any additional limitations, means that the claimant is capable of at least low stress work. The ALJ gave "some weight" to each of these opinions. (R. 22-23) Consequently, I reject Benson's suggestion that a remand is necessary on this issue.

(3) Symptoms

Benson also objects to the ALJ's evaluation of his symptoms. Social Security Ruling 16-3p sets forth a two-step process for evaluating an individual's symptoms. First, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. Second, the ALJ will evaluate the intensity and persistence of those symptoms and determine the extent to which the symptoms limit the individual's ability to perform work-related activities. SSR 16-3p.

Here, the ALJ acknowledged the two-step process. (R. 18) First, he determined that Benson's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, he evaluated Benson's statements concerning the intensity, persistence and limiting effects of those symptoms. In so doing, and contrary to Benson's contentions, he considered the medical record, Benson's activities of daily living, the course of medical treatment and the use of medication,[3] and Benson's statements. (R. 18-24) This is consistent with the process set forth in SSR 16-3p.

---

[3] Benson urges that the ALJ failed to consider the use of medication or course of treatment. *See* ECF Docket No. 8, p. 16-17. Yet the ALJ states that "[t]he course of medical treatment and the use of medication in this case are not consistent with disabling impairments. The claimant currently receives fairly conservative treatment for his impairments. There is no indication in the medical record that his medications cause significant or debilitating side effects." (R. 22)

8

Benson's argument consists of nothing more than a request to re-weigh the evidence of record. "In determining whether substantial evidence exists, this court cannot re-weigh the evidence or substitute its judgment for that of the ALJ." *Johnson v. Comm'r. of Soc. Sec.*, 497 F.App'x. 199, 201 (3d Cir. 2012) (*citations omitted*). The question before me is whether substantial evidence of record supports the ALJ's decision. For the reasons set forth elsewhere in this Opinion, I find that substantial evidence supports the ALJ's findings.

(4) Twelve-Month Duration

The ALJ noted that, in August of 2017, Benson presented for medical care regarding the treatment of his back. At the time, Benson reported having "tripped while jumping over a fence." (R. 638) The ALJ observed that, "even if the claimant's recent treatment for his back indicates worsening of his condition, it does not meet the 12-month durational requirement." (R. 20) Benson objects to this finding, urging that the ALJ's decision was issued nearly eleven months after the "worsening" of the condition. As stated above, the ALJ found that Benson presented with a normal gait; that he received conservative treatment; that he displayed full strength; that he reported an improvement of his symptoms and had normal examinations. (R. 20) Consequently, the ALJ found that Benson did not have a disabling impairment. For the reasons set forth above, I find that conclusion to be supported by substantial evidence of record. Because I affirm the ALJ's finding on this basis, I need not consider his alternative basis for denying benefits.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY DAVID BENSON | ) | |
|     Plaintiff, | ) | |
|   -vs- | ) | Civil Action No. 19-111 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| | ) | |
|     Defendant. | ) | |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 14th day of April, 2020, it is hereby ORDERED that the Plaintiff's Motion for Summary Judgment (Docket No. 7) is DENIED and the Defendant's Motion for Summary Judgment (Docket No. 9) is GRANTED. It is further ORDERED that the Clerk of Courts mark this case "Closed" forthwith.

                                          BY THE COURT:

                                          /s/ Donetta W. Ambrose
                                          Donetta W. Ambrose
                                          United States Senior District Judge